IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| EVERETTE SCOTT, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:15-012525 |
| WILLIAM CARNELL, *et al.*, | ) |
| Defendants. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On August 19, 2015, Plaintiff, an inmate incarcerated at FCI Beckley, and acting *pro se*,[1] filed his Application to Proceed *in Forma Pauperis* and Complaint claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 3.) In his Complaint, Plaintiff names the following as Defendants: (1) William Carnell; (2) Charles E. Samuels, Jr.; (3) Joel Coakley; (4) C. Martin-Brown; (5) Ann Elizabeth Card; (6) David LeMaster; (7) L. Flanagan; (8) James Sed; (9) James Boggs; (10) Donnie Morris; (11) Martino Stegall; and (12) the United States of America. (Document No. 3.) Plaintiff alleges that Defendants subjected him to slander, defamation, bullying, assault, intimidation, harassment, and mental anguish. (Id.) Plaintiff further complains that he was improperly removed from the Residential Drug Abuse Program ["RDAP"]. (Id.) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

explains that he "willingly trusted the Defendants by participating in treatment at all relevant times, thus sharing honestly and confidentially his treatment issues that previously lead to addiction, family crisis and other personal matters." (Id., p. 5.) Plaintiff contends that he "was successful in his career prior to incarceration and was forced to discuss these facts while disclosing his personal issues." (Id.) Plaintiff states that following this disclosure, "Plaintiff began to experience direct verbal attacks and ridicule from Defendants about his background." (Id.) Plaintiff states that on June 17, 2014, "Defendant Boggs confronted Plaintiff and advised him that he did not like Plaintiff discussing his past accomplishments in the community and that he would do what it takes to 'hold accountable' the Plaintiff in the future." (Id., pp. 5 - 6.) Plaintiff alleges that Defendant Boggs stated "Defendant Carnell would be 'specially gunning' for Plaintiff because Carnell did not feel individuals with Plaintiff's achievement and educational background should be in the program." (Id., p. 6.)

Plaintiff alleges that on July 16, 2014, "Defendants Sed and Boggs confronted Plaintiff in the general community meeting and accused him of suffering from grandiosity and humility issues regarding his past accomplishments." (Id.) Plaintiff contends that on August 4, 2014, "Defendant Stegall approached Plaintiff and stated that he and other peers feel that Plaintiff is 'not one of them' and doesn't belong in the program." (Id.) On September 17, 2014, Plaintiff alleges that Defendant Boggs accused Plaintiff of making his treatment presentation "as if he 'was in a courtroom.'" (Id., p. 6.) Plaintiff asserts that on October 29, 2014, Defendant Stegall "misrepresented and falsely accused Plaintiff of conveying news of the death of a peer's mom." (Id., p. 7.) Plaintiff further claims that Defendants Boggs, Stegall, and Sed, and other inmates, "conspired to give Plaintiff intensive feedback in the community meeting using harsh

2

defamatory words that amounted to harassment, intimidation, assault, and bullying efforts to attack the Plaintiff." (Id.) Plaintiff contends that on January 21, 2014, Defendants Sed and Boggs made a "confrontation 'pull-up' against the Plaintiff for manipulating another peer." (Id.) On January 22, 2014, Plaintiff alleges that Defendant Sed "accused Plaintiff of being dishonest in front of the community pertaining to the confrontation 'pull-up.'" (Id.) Plaintiff claims that on January 23, 2014, "the Bubble manipulated and conspired to attack and seek removal [of Plaintiff] from the program." (Id., p. 8.) Plaintiff explains that Defendant Sed, Boggs, Morris, and five other inmates called Plaintiff "defamatory and derogatory names." (Id., pp. 8 - 9.) On January 24, 2014, Plaintiff alleges that Defendants Sed and Martin-Brown required Plaintiff to stand in front of the community to do a personal treatment for intensive feedback. (Id., p. 9.) Plaintiff complains that he was "forced to admit that he had been dishonest, when he was not." (Id., pp. 9 - 10.) Plaintiff alleges that "[f]or the next 15 - 20 minutes, Plaintiff received extremely vicious, harsh, degrading criticism and attacks from designated peers in the community, including Defendants Sed, Morris, Boggs, and Stegall." (Id., p. 10.) Plaintiff states that during a team meeting on February 5, 2015, Defendant Carnell "insulted Plaintiff with a racial slur" by stating "You remind me of Johnnie Cochran and the O.J. Simpson trial." (Id.) Plaintiff complains that during the same meeting, Defendant Flanagan stated "I don't believe a word you say and I just met you." (Id.) Plaintiff asserts that following the meeting, Plaintiff received a written document from Defendant Martin-Brown stating that Plaintiff had been "expelled for continued dishonesty in the RDAP program." (Id.) Plaintiff alleges that Defendants' conduct resulted in intimidation, emotional anxiety, harassment, assault, bullying, embarrassment, and humiliation. (Id., pp. 1 - 12.) Plaintiff states that he suffered from emotional distress, sleeplessness, vomiting,

anxiety, nausea, headaches, and high blood pressure. (Id.) As relief, Plaintiff requests monetary damages and declaratory judgment. (Id., pp. 12 - 13.)

Also on August 19, 2015, Plaintiff filed his "Motion for Temporary Restraining Order and Preliminary Injunction." (Document No. 4.) Plaintiff requests a temporary restraining order and preliminary injunction prohibiting Defendants from "retaliating against Plaintiff for filing the above captioned action." (Id.) Specifically, Plaintiff requests that the Court prohibit Defendants from the following: (1) "Placing Plaintiff in segregated/isolated housing;" (2) "Denying Plaintiff access to the law library and legal material;" (3) "Interfering with Plaintiff's incoming and outgoing mail;" (4) "Denying Plaintiff telephone, computer, and full commissary access equal to the general population;" (5) "Attempting to intimidate, threaten or otherwise harass Plaintiff;" (6) "Unjustifiably transferring Plaintiff to another Bureau of Prisons facility and/or delaying his 90 day release to home confinement/halfway house/halfway house (on or before January 4, 2016);" and (7) "Subjecting Plaintiff to additional verbal or physical abuse by staff and inmates." (Id.) Plaintiff alleges that he will suffer irreparable harm unless the requested relief is granted because "Plaintiff will not be able to effectively prosecute the aforementioned Complaint filed with this Court." (Id.)

## **STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v.

Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## ANALYSIS

**1.     FTCA Claim:**

A plaintiff's FTCA claim must fit into one of the limited areas where Congress waived sovereign immunity. Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); also see Treasurer of New Jersey v. United States Department of Treasury, 684 F.3d 382 (3rd Cir. 2012)("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacity.") An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Specifically, the FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

There are, however, exceptions to the FTCA's waiver of sovereign immunity. Pertinent to the instant case, Section 1346(b)(2) provides as follows:

> No person convicted of a felony . . . while serving a sentence may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Although the FTCA does not define "physical injury," courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Calderon v. Foster, 2007 WL 1010383 (S.D.W.Va. March 30, 2007)(noting that 42 U.S.C. § 1997e(e) is a related statute, which is not satisfied by a *de minimis* injury), aff'd, 264 FedAppx. 286 (4th Cir. 2008); also see Tsosie v. Bureau of Prisons, 2012 WL 4484935, * 4 (M.D.Pa. Sept. 27, 2012)(*de minimis* physical injuries "are insufficient to maintain a viable FTCA claim"); Owens v. United States, 2012 WL 6057126, * 5 (E.D.N.C. Dec. 6. 2012)("in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of the negligence" and must show that his injury is "more than *de minimis*"); Hornes v. United States, 2007 WL 1463028, * 11 (N.D.W.Va. May 17, 2007)(dismissing plaintiff's tort and constitutional claim for mental or emotional damages where plaintiff could not "show a physical injury or that his claim [was] more than *de minimis*"). *De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for." Perez v. United States, 330 Fed.Appx. 388, 389 (3rd Cir. 2009); also see Hill v. Crum, 727 F.3d 312 (4th Cir. 2013)(citations omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); Calderon, 2007 WL 1010383 at * 8(finding that plaintiff's allegation that he had a history of heart attacks and experienced

chest pains, shortness of breath, dizziness, and shaking after an object hit door producing a loud noise was a *de minimis* injury). Physical pain alone is insufficient to constitute more than a *de minimis* injury. See Calderon, 2007 WL 1010383 at * 8(citation omitted)(physical pain alone is a *de minimis* injury that may be characterized as a mental or emotional injury); Shields v. United States, 2010 WL 2803399 (N.D.N.Y. July 15, 2010)("If plaintiff's injury is *de minimis*, he is not entitled to compensation for pain and suffering."), aff'd, 446 Fed.Appx. 325 (2nd Cir. 2011). A plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show that none of the FTCA's waiver exceptions apply." LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008), cert. denied, 555 U.S. 1170, 129 S.Ct. 1313, 173 L.Ed.2d 584 (2009).

 In the instant case, Plaintiff seeks physical and emotional damages after Defendants allegedly subjected him to verbal abuse and verbal harassment. The undersigned finds no indication that Plaintiff suffered more than a *de minimis* injury. In his Complaint, Plaintiff contends that Defendants' alleged misconduct caused him to suffer from emotional distress, sleeplessness, vomiting, anxiety, nausea, headaches and high blood pressure. Such conditions, however, do not constitute more than a *de minimis* injury. See Chatham v. Adcock, 334 Fed.Appx. 281, 284 (11th Cir. 2009)(finding that a plaintiff's claims of anxiousness, nausea, nightmares, hallucinations, and increase in blood pressure were not enough to satisfy the Section 1997e(e) physical injury requirement); Alexander v. Tippah County, Miss., 351 F.3d 626, 631-32 (5th Cir. 2003)(finding that Section 1997e(e) precluded the plaintiffs from recovering for their emotional and mental injuries where the only physical injuries they had suffered were nausea and vomiting); Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 2003)(finding that a

temporary, sore, bruised ear was *de minimis* and failed to meet the requisite physical injury requirement to support a claim of emotional damages); Casey v. Brockley, 2015 WL 8008728, * 9 (N.D.N.Y. Nov. 9, 2015)(stating that "numerous courts have held-correctly . . . that physical manifestations of emotional injuries (e.g. anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injures' for purposes of the PLRA"); Lewis v. Cox, 2011 WL 3106929, * 1(W.D.La. July 25, 2011)(finding that "[n]ausea and lack of sleep are mere symptoms of the alleged emotional distress he suffered and do not, in and of themselves, constitute the type of physical injury required under the PLRA"); Grainger v. Federal Bureau of Prisons, 2009 WL 47127, * 3 (S.D.Tx. Jan. 6, 2009)(finding that plaintiff's complaints of anxiety, stress, emotional distress, loss of appetite, headaches and sleeplessness did not constitute more than a *de minimis* injury); May v. Donneli, 2009 WL 3049613, * 3 (N.D.N.Y. Sept. 18, 2009)(finding that weight loss and an increase in blood pressure did not constitute more than a *de minimis* physical injury). The undersigned, therefore, finds that at most Plaintiff alleges a *de minimis* injury. Accordingly, the undersigned respectfully recommends that Plaintiff's FTCA claim be dismissed.

**2.     Bivens Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims);

Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers,

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A. **Eighth Amendment:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To

establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

Plaintiff contends that Defendants violated his constitutional rights by accusing Plaintiff of being dishonest. (Document No. 1.) Plaintiff further alleges that Defendants allowed other inmates to accuse Plaintiff of being dishonest and subject him to verbal abuse. Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at

11

834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted or that his life was threatened by other inmates because of statements made by Defendants or the other inmates. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendants' alleged reference to Plaintiff as being dishonest. Specifically, Plaintiff alleges that suffered from emotional distress, sleeplessness, vomiting, anxiety, nausea, headaches and high blood pressure. The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). As stated above, at most Plaintiff has alleged only a *de minimis* injury.

      Finally, Plaintiff's allegation of verbal abuse or verbal harassment by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir.

(Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (explaining that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(verbal abuse by a prison guard does not give rise to a cause of action under § 1983); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D. N.C.) ("[w]ords by themselves [including verbal abuse or profanity] do not state a constitutional claim, without regard to their nature"), aff'd, 917 F.2d 1302 (4th Cir. 1990). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**B.     No Liberty Interest in RDAP Placement or to Early Release:**

Plaintiff appears to allege that his constitutional rights were violated when he was expelled from RDAP. (Document No. 1.) The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that he had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston v. Taylor, 946

F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to RDAP, Plaintiff must show either (1) that he has a legitimate entitlement to admission in RDAP or in early release or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary

14

transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez, 531 U.S. at 232, 121 S.Ct. at 718. The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[3] See Lopez, 531 U.S. at 240, 121 S.Ct. at 721(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18

---

[3] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero v. Thomas, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Plaintiff does not possess a constitutionally protected expectation interest in receiving a sentence reduction. Such a subjective expectation does not rise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's Program Statement (P.S. 5162.05), nor the Code of Federal Regulations (28 C.F.R. § 550.55), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given

rise to a protected liberty interest in early release.[4] See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Plaintiff does not possess a statutorily protected expectation interest in early release.

3. **State Law Claims:**

Viewing Plaintiff's claims against the Defendants for the tort of defamation or slander under West Virginia law,[5] the District Court cannot consider them under its supplemental jurisdiction because Plaintiff has failed to state any other claim for which relief can be granted over which the District Court has original jurisdiction.[6]

---

[4] Even upon completion of RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B).

[5] To the extent Plaintiff is claiming that Defendants defamed his character in violation of a federally protected right, his claim is without merit. *See Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991)("Defamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation."); *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165 - 66, 47 L.Ed.2d 405 (1976)(finding that "any harm or injury to [Plaintiff's interest in his reputation], even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law"); *Saunders v. Dickerson*, 2008 WL 2543428 *2 (E.D.Va. Jun. 25, 2008)(stating that "[p]laintiff's reputation is protected through state tort law, and a mere allegation of damage to one's reputation and character fails to implicate any liberty or property interests protected by the Constitution"); *Sterne v. Thompson*, 2005 WL 2563179 at *4 (E.D.Va.)("It is well established that a defamatory statement and a concomitant injury to reputation, by themselves, are insufficient to support a *Bivens* claim under the Fifth Amendment."); *Miller v. Jack*, 2007 WL 2050409 (N.D.W.Va. Jul. 12, 2007)(finding that "damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, lineprivilege, or immunity secured to him by the Constitution or the laws of the United States").

[6] The District Court has supplemental jurisdiction over State law tort claims "that are so related to claims in the action within [the District Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[T]he federal claim must have sufficient substance to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative

4. **Motion for Temporary Restraining Order and Preliminary Injunction:**

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

Based upon the foregoing, the undersigned has recommended that Plaintiff's Complaint be dismissed. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief

---

facts." *United Mineworkers of America v. Gibbs*, 383 U.S. 718, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)(Citation omitted.)

should be denied as he cannot establish that he is likely to succeed on the merits.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (Document No. 1), **DENY** Plaintiff's "Motion for Temporary Restraining Order and Preliminary Injunction" (Document No. 4), **DISMISS** Plaintiff's Complaint (Document No. 3), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge

Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 29, 2016.

Omar J. Aboulhosn
United States Magistrate Judge